IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AISHA DEARION, individually and on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) v. ) ) FINANCIAL MANAGEMENT SYSTEMS, INC., ) ) Defendant. ) | No. 15 C 1731 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aisha Dearion, on behalf of herself and all others similarly situated, has brought a putative class action complaint against defendant Financial Management Systems, Inc., alleging a violation of the writing and notice requirements of the Electronic Funds Transfer Act ("EFTA"). 15 U.S.C. § 1693e(a) (1978). Defendant answered and raised a number of affirmative defenses, including that plaintiff had already settled and released her claims. Defendant has now moved to enforce the settlement agreement allegedly reached with plaintiff prior to the filing of the lawsuit. For the reasons discussed below, the court grants the motion to enforce the settlement agreement.

## BACKGROUND[1]

According to the complaint, defendant is a corporation that engages in debt collection. In October 2014, defendant contacted plaintiff over the telephone to collect or recover payment for an allegedly defaulted student loan obligation. In that telephone conversation, plaintiff provided defendant with her personal banking information to allow defendant to begin automatic

---

[1] The facts have been taken from the complaint, and the affidavits and exhibits submitted by the parties.

deductions from her account. Plaintiff filed the instant action alleging that defendant violated the EFTA, after defendant began electronically debiting plaintiff's personal bank account in the amount of five dollars each month for five months without written authorization, and without providing to plaintiff a copy of any document that plaintiff signed authorizing the funds transfer.

Prior to filing the complaint, however, on November 18, 2014, plaintiff, through her then lawyer, Derek DePetrillo of the Consumer Rights Law Firm, sent a pre-litigation demand letter to defendant asserting violations of the Fair Debt Collections Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA") based upon phone calls made to plaintiff and the deductions from her account. The letter included a section titled "Possible Additional Liability" that stated:

> Please be aware that in addition to your clear liability under both the FDCPA and the TCPA, my office is currently exploring your potential liability under other laws and statutes but not limited to the Fair Credit Reporting Act, 15 U.S.C. § 1681.

The demand letter also contained a section titled "Settlement Option," in which the plaintiff's attorney stated, "my client has authorized me to settle this matter with your company."

On January 15, 2015, DePetrillo reached out by e-mail to defendant's lawyer, Samuel Ford, with whom DePetrillo was familiar, having settled numerous cases with him on behalf of defendant and other debt collectors, requesting status of the demand. The following day, Ford responded by e-mail stating, "I'm not sure there is liability here because I don't see calls to plaintiff's mother at the number alleged and I don't see where plaintiff asked FMS to stop calling her POE. Nonetheless, what is your demand for this matter?"[2] On the same day, plaintiff replied

---

[2] For some unknown reason, the parties have redacted from the court's copies of briefs
(continued...)

2

with a demand amount.  On January 19, 2015, Ford replied, "Although FMS Investment Corp. denies any liability on this one, it is willing to offer settlement of [omitted] for a <u>full release and confidentiality</u>, in order to avoid paying defense costs." (Emphasis added.) On January 20, 2015, DePetrillo sent Ford yet another e-mail: "I have authority to resolve this matter at [omitted]. If that is acceptable than [sic] please send along a release."

Ford responded that same day stating, "I'm getting a lot of pushback on this one and I had to fight to get above the [omitted] mark but I can do [omitted] to wrap this one up. Please confirm that this is acceptable and I will draft a release." Two days later, on January 22, 2015, DePetrillo accepted the counteroffer by replying, "We can agree to the [omitted], can you turn around a release in 24 hours?" Ford replied, "That shouldn't be a problem. The client needs to see it first but we are flipping it to him now and it should be a quick turn around."

On January 29, 2015, DePetrillo asked Ford to send the release. Ford sent it the same day, acknowledging that he was sorry for the delay. One month later, on February 26, 2015, DePetrillo sent Ford an e-mail requesting that the following language be added to the release to exclude the violations of the EFTA alleged the instant action filed that same day by a different law firm:

> However, such released claims do not and will not include the claims asserted by Plaintiff in the matter of <u>Aisha Dearion v. Financial Management Systems, Inc</u>. filed on February 26, 2015 in the United States District Court for the Northern District of Illinois…pertaining to Plaintiff's or the putative class' claims asserted therein, specifically, claims asserted under the Electronic Funds Transfers Act, 15 U.S.C. 1693, et seq.

---

[2](...continued)
and exhibits the exact amounts of the offer and each counteroffer.

After not hearing from defense counsel, DePetrillo inquired as to the status of the addition to the release. On March 6, 2015, Ford rejected the proposed amendment to the release:

> We will stick to what we agreed to – a full and complete release. That is clear from the negotiations in the email chain below, wherein we countered your initial demand with an offer of [omitted] *for a full release* and confidentiality. The final monetary figure was hammered out from there. You made no mention of limiting the release or doing anything different then [sic] we have done in probably 100+ settlement releases previously. On behalf of and with authority from your client, she accepted [omitted] for a full release through and including January 29, 2915. We fully expect your client will honor that which she has agreed to, as will ours. Please have your client sign and return the attached release immediately.

Plaintiff's counsel responded that his client would, "not sign a complete release of all her claims."

On March 16, 2015, plaintiff's lawyer inquired as to whether defendant's position on the addition to the release had changed. Defendant responded, "It's not our position, it's about the terms we agreed to. A full release was agreed to. We expect your client to honor those terms."

## **DISCUSSION**

The complaint alleges that defendant violated the EFTA when it debited her personal bank account without written authorization from plaintiff. The writing and notice requirement of the EFTA provides that, "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a).

Defendant has moved to enforce the settlement agreement allegedly agreed upon by the parties. Defendant argues that plaintiff agreed in January 2015 to a final settlement of any and all of plaintiff's claims against defendant relating to the student loan debt collection. Plaintiff

4

counters that that the final settlement agreement had never been executed and that there was no meeting of the minds as to the material terms of the alleged contract.

The parties appear to agree that Illinois law governs the instant dispute.[3] Under Illinois law, settlement agreements are enforceable if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." Dillard v. Starcon International, Inc., 483 F.3d 502, 506 (7th Cir. 2007). "The essential terms must be 'definite and certain' so that the court can ascertain the parties' agreement from the stated terms and provisions. Id. In determining whether there is a meeting of the minds, the fact that "a formal written document is anticipated does not preclude enforcement of a specific preliminary promise." Id. "The Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or "incomplete" agreements," Id. at 374, so long as the material terms have been agreed upon. Tugestch v. Bradley Dental, LLC, 2010 WL5099981, *1 (N.D. Ill. 2010).

In the instant case, the e-mail correspondence between Ford and DePetrillo establishes that there were three essential terms to the agreement: 1) the amount to be paid by defendant to plaintiff, 2) a confidentiality provision, and 3) a "full release" of all claims. Only the amount of the settlement was ever negotiated and the parties reached an agreement as to that on January 22, 2015, when DePetrillo wrote, "we can agree to [omitted]." Defendant argues that at that point,

---

[3] Plaintiff is a resident of Texas and defendant is a resident of Illinois. The written settlement agreement indicated that it is to be interpreted under Texas law. Neither party has performed a choice of law analysis. Because the court's own research indicates that there is no significant difference between Illinois law and Texas law as to formation and enforcement of a contract, see Kanan v. Plantation Homeowner's Ass'n Inc., 407 S.W.3d 320, 330 (Tex. App. 2013), and because the parties agree, the court applies Illinois law.

5

the parties had reached an agreement and there was nothing left to do except prepare the papers. The court agrees.

Plaintiff argues that no agreement was finalized because execution of the release agreement was a condition precedent to formation of the settlement. Relying on Lambert Corp. v. Evans, 575 F.2d 132 (7th Cir. 1978), and similar cases, plaintiff argues that parties negotiating a contract can make their agreement contingent on the execution of a formal document. This is a correct statement of law, but nothing in the e-mail negotiations supports plaintiff's position that their agreement was contingent on a signature. Lambert makes clear that where, as here, a formal document is prepared simply to memorialize a bargain the parties have already made, the bargain is enforceable even though the document has not been executed. Id. at 155. Because there is no evidence that execution was a condition precedent to the agreement, the court rejects plaintiff's position.

Plaintiff next argues that there was no meeting of the minds as to the essential terms of the agreement. But nothing in the e-mail string suggests that the parties ever contemplated anything other than a full release and confidentiality. And, as defendant points out, DePetrillo never argued to Ford that they had not reached an agreement, even after Ford insisted that they had. Nor has plaintiff submitted an affidavit from DePetrillo indicating that he did not reach an agreement with Ford. DePetrillo had dealt with Ford on multiple occasions and knew what Ford meant by a "full release." That plaintiff changed her mind after consulting a new attorney cannot alter the agreement DePetrillo reached on her behalf. She authorized DePetrillo to strike a deal and he did. He reached an agreement with Ford on all the essential terms, and plaintiff is bound by that agreement. "If a party to a…suit who has authorized a settlement changes his

6

mind…that party remains bound by the terms of the agreement." See Glass v. Rock Island Refining Corp., 788 F.2d 450, 454-55 (7th Cir. 1986).

## **CONCLUSION**

For the reasons described above, the court grants defendant's motion to enforce the settlement agreement and hereby enforces the terms of that agreement. The court directs the parties to tender to each other by July 15, 2015, full payment and an executed "full release." Absent notification of nonperformance this action will be dismissed with prejudice on July 18, 2015.

**ENTER:** **July 1, 2015**

_____
**Robert W. Gettleman**
**United States District Judge**